O

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERI FARRAR, and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CATALINA RESTAURANT GROUP, INC. and FOOD MANAGEMENT PARTNERS, INC.<br><br>Defendants. | Case No. 16-cv-09066 DDP (JCx)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>[Dkt. 77] |

Presently before the court is Defendants' Motion for Summary Judgment. Having considered the parties' submissions and heard oral argument, the court adopts the following Order.

**I. BACKGROUND**

Plaintiffs Jeri Farrar, Kyle Whitney, Gary Graham, Bill Dizon, Francisco Jiminez, and Gina McMahon ("Plaintiffs") brought this putative class action against Defendants Catalina Restaurant Group, Inc. and Food Management Partners, Inc. (collectively,

"Defendants") for violations of the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. §§ 2101 *et seq.*, and the California WARN Act, Cal. Lab. Code § § 1400 *et seq.*, both resulting from an April 2015 reduction in force at Catalina Restaurant Group's corporate headquarters. (Dkts. 1, 41).

Catalina Restaurant Group ("Catalina") owns and operates restaurants throughout California and Arizona. (Runyon Decl. ¶ 3.) Catalina had corporate headquarters in Carlsbad, California, which provided administrative support to its restaurant locations. (*Id.* at ¶ 5.) In April 2015, Catalina implemented a reduction in force, closing a number of its restaurants and terminating employees at its corporate headquarters. (Donbavand Decl. ¶ 3.)

Plaintiffs contend that Defendants terminated the employment of 53 employees at Catalina's corporate headquarters between April 1 and April 24, 2015, thereby triggering the advance notice requirements of the federal and state WARN Acts. (Pls.' Ex. 3, Dkt. 79). Defendants, in contrast, declare that the WARN Acts' advance notice provisions do not apply because Catalina's corporate headquarters laid off only 47 employees during this period. (Donbavand Decl. ¶ 6.)

On the basis of the facts alleged above, Plaintiffs filed a putative class action against Defendants, alleging violations of the federal WARN Act, 29 U.S.C. §§ 2101 *et seq.* and the California WARN Act, Cal. Lab. Code § 1400 *et seq.* (Dkt. 1.) Defendants now move for summary judgment.

**II. LEGAL STANDARD**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). All

2

reasonable inferences from the evidence must be drawn in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242 (1986). If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1278 (9th Cir.1996). Counsel have an obligation to lay out their support clearly. *Carmen v. San Francisco Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." *Id.*

**III. DISCUSSION**

The centerpiece of this dispute involves whether Catalina laid off 50 or more employees from its Carlsbad corporate headquarters as part of its April 2015 reduction in force, thereby triggering the notice requirements of the federal and California WARN Acts.

3

Under the federal WARN Act, covered employers must provide employees with advance notice of a "plant closing" or "mass layoff." 29 U.S.C. § 2102(a). Both a "plant closing" and "mass layoff" are triggered when, *inter alia*, at least 50 full-time employees are terminated over a 30-day period. *Id.* §§ 2101(a)-(b). Similarly, the California WARN Act mandates that covered businesses who order a relocation, termination, or mass layoff must provide advance notice to employees.[1] Cal. Labor Code § 1401(a). Under the California WARN Act, a "mass layoff" is defined as the layoff of 50 or more employees during a 30-day period. *Id.* § 1400(d).

Defendants contend there is no evidence that Catalina terminated 50 or more employees as part of the April 2015 reduction in force. Specifically, Defendants declare that Catalina terminated only 47 employees from its corporate headquarters as part of the reduction in force. (Donbavand Decl. ¶ 6), and that Catalina did not terminate 50 or more employees total in the 90 days before or after the April 2015 reduction in force. (*Id.* ¶ 7.)[2]

Plaintiffs dispute Defendants' claims by pointing to payroll records from April 1, 2015 to May 27, 2015. These payroll records suggest that Catalina's corporate headquarters had 53 individuals on its payroll on April 1, 2015. (Pls.' Am. Ex. 3, Page ID #1351, Dkt. 80) (spreadsheet listing 53 names with a check date of "4/1/2015.") Plaintiffs assert that, by April 24, 2015, all 53 employees had been terminated. (Opp. at 4.)
In support of this assertion, Plaintiffs theorize that the word "TRUE" on an employee's payroll run records indicates whether an employee was laid off. For example, Plaintiffs claim that Defendants "placed the word ["TRUE"] on the furthest right hand column . . . for those employees terminated on April 3, 2015. (Opp. at 12 n. 4.) Plaintiffs subsequently explain that "Defendants did not place the word ["TRUE"] in the furthest right-hand

---

[1] Of these, the Complaint specifies that Defendants implemented a "mass layoff" under California Labor Code § 1400(c)-(d). (Compl. ¶ 49-51.)
[2] Under 29 U.S.C. § 2102(d), employment losses "which occur within any 90-day period shall be considered to be a plant closing or mass layoff unless the employer demonstrates that the employment losses are the result of separate and distinct actions and causes and are not an attempt by the employer to evade the requirements of this chapter."

4

column of any of these terminated employees, thus indicating that these employees no longer work for Defendants." (Opp. at 12 n. 5.) In other words, the notation "TRUE" next to an employee's payroll run entry signals that he or she would be terminated, and the absence of the notation "TRUE" in subsequent entries indicates that he or she had already been terminated.

Plaintiffs offer no explanation or evidentiary support for this reading of the payroll records. Furthermore, the same payroll records indicate that the allegedly terminated employees continued to receive paychecks well after their termination dates. *Cf.* Compl. ¶ 18 ("The terminated employees received no severance, and were only paid through the day they were laid off."). For example, Plaintiffs claim that employees Christopher Barkley, William Clark, and Vincent Plaza were all terminated on April 24, 2015. (Pls.' Am. Ex. 3, Page ID #1360.) Yet each of these employees received paychecks on May 13, 2015, (*Id.*, Page ID #1368), and continued to receive paychecks on May 27, 2015. (*Id.*, Page ID #1370.)[3] Similarly, Plaintiffs contend that employee Luseane Netane was laid off on April 3, 2015 because her name appears with the word "TRUE" next to it in the payroll run. (Opp. at 6.) However, Netane continued to receive checks on April 24, 2015 and May 27, 2015. (Pls.' Am. Ex. 3, Page ID #1360, 1370.) Employee Marciela Canizalez, whom Plaintiffs assert was terminated on April 15, 2015, (Opp. at 7), also continued to receive payments on April 24, 2015, as well as May 27, 2015. (Pls.' Am. Ex. 3, Page ID #1360, 1370.)

The court finds that Catalina's payroll records do not reasonably support Plaintiffs' theory of termination, whereby all 53 of the employees at Catalina's corporate headquarters were terminated as of April 24, 2015. Instead, the payroll record bolsters Defendants' contention that 47 employees were terminated as part of the April 2015 reduction in force. The names of six out of the original 53 employees appear on Catalina's payroll as of May 27, 2015. (Pls.' Am. Ex. 3, Page ID #1370.) Absent evidence that

---

[3] No further paycheck data is provided for the period after May 27, 2015.

5

undermines Defendants' claims, the court concludes that Plaintiffs have not created a triable issue of fact as to whether at least 50 corporate headquarters employees were terminated as a result of the April 2015 reduction of force.

In addition, Plaintiffs emphasize that employment losses that occur within a 90 day period "shall be considered to be a plant closing or mass layoff," unless the employer demonstrates that these employment losses actions are separate and distinct, and not an attempt to effect an end-run around the requirements of the WARN Act. *See* 29 U.S.C. § 2102(d). Defendants state that "Catalina did not terminate 50 or more employees total in the 90 days before or after the April 2015 reduction in force." (Donbavand ¶ 7.) Plaintiffs proffer no evidence of additional terminations over a 90-day period that were not reflected in the April 1 to May 27, 2015 payroll records. Therefore, even assuming that § 2102(d) applies here, Plaintiffs have submitted no evidence of subsequent layoffs that should be considered together with the April 2015 layoffs when determining whether the WARN Act thresholds have been triggered.

Finally, Plaintiffs contend that employees who voluntarily leave their positions after they receive notice of a plant closing also count toward "employment loss," and must be counted toward the 50-person threshold for advance notice under the WARN Act. In *Collins v. Gee West Seattle*, the Ninth Circuit ruled that "[w]here an employee's reason for departing is because the business is closing, such a departure cannot be termed 'voluntary' under the Act." *Collins v. Gee W. Seattle LLC*, 631 F.3d 1001, 1009 (9th Cir. 2011). Even so, the record is devoid of evidence of any employees who left voluntarily because of the closure of Catalina's corporate headquarters. And, even if some employees had done so, their departures would have been reflected in the payroll records that Plaintiffs submitted for the period from April 1 to May 27, 2015.

In view of the evidence set forth, Plaintiffs have not created a triable issue of fact as to whether 50 or more corporate headquarters employees were terminated as part of the April 2015 reduction in force. Therefore, Defendants are entitled to summary judgment on Plaintiffs' federal and state WARN Act claims.

## IV. CONCLUSION

For the reasons stated above, the court GRANTS Defendants' Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated: January 22, 2018

_____
DEAN D. PREGERSON
UNITED STATES DISTRICT JUDGE