O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| JERI FARRAR, and others similarly situated, | ) Case No. 16-cv-09066 DDP (JCx) |
|---|---|
| Plaintiffs, | ) |
| v. | ) **ORDER RE: DEFENDANTS'** |
| | ) **MOTION FOR ATTORNEYS' FEES** |
| CATALINA RESTAURANT GROUP, INC. and FOOD MANAGEMENT PARTNERS, INC. | ) **AND COSTS** |
| | ) [Dkt. 85] |
| Defendants. | ) |

Presently before the court is Defendants' motion for attorneys' fees and costs, Dkt. 85. Having considered the parties' submissions and heard oral argument, the court adopts the following Order.

**I. BACKGROUND**

Plaintiffs Keri Farrar, Kyle Whitney, Gary Graham, Bill Dizon, Francisco Jiminez, and Gina McMahon ("Plaintiffs") brought a putative class action against Defendants

Catalina Restaurant Group, Inc. and Food Management Partners, Inc. (collectively, "Defendants") for violations of the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. §§ 2101, *et seq.*, and the California WARN Act, Cal. Lab. Code §§ 1400–1408, both resulting from an April 2015 reduction in force at Catalina Restaurant Group's corporate headquarters. (Dkt. 1, 41).

Defendants moved for summary judgment, claiming that the WARN Acts did not apply to the April 2015 reduction in force. (Dkt. 77.) Specifically, Defendants contended that there was no evidence that Catalina Restaurant Group ("Catalina") had terminated 50 or more employees as part of the April 2015 reduction in force, thereby triggering the notice requirements of the federal and California WARN Acts.

The court entered summary judgment in Defendants' favor. Defendants now move for attorneys' fees and costs. (Dkt. 85.)

**II. LEGAL STANDARD**

In a case brought under the federal WARN Act, "the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs." 29 U.S.C. § 2104(a)(6). With respect to a prevailing defendant, the court may award attorneys' fees "when the plaintiff's claims were frivolous, unreasonable, or without foundation." *Childress v. Darby Lumber, Inc.*, 357 F.3d 1000, 1011 (9th Cir. 2004).

Federal Rule of Civil Procedure 54(d)(1) "creates a presumption in favor of awarding costs to a prevailing party, but vests in the district court discretion to refuse to award costs." *Ass'n of Mexican–American Educ. v. State of Cal.*, 231 F.3d 572, 591 (9th Cir. 2000) (en banc).

**III. DISCUSSION**

    **A. Motion for Attorneys' Fees**

        **i.** **Satisfaction of the *Christiansburg* Standard for Fees**

A prevailing defendant in a WARN Act case may, at the court's discretion, be awarded attorneys' fees. 29 U.S.C. § 2104(a)(6). However, this discretion is exercised only

when the plaintiff's claims are "frivolous, unreasonable, or without foundation," *Childress*, 357 F.3d at 1011, or "the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978). "A case may be deemed frivolous only when the result is obvious or the . . . arguments of error are wholly without merit." *Karam v. City of Burbank*, 352 F.3d 1188, 1195 (9th Cir. 2003) (quotations omitted). Subjective bad faith is not required. *Christiansburg,* 434 U.S. at 421.

Because "the course of litigation is rarely predictable," "[d]ecisive facts may not emerge until discovery or trial." *Id.* at 422. In light of the evidence set forth in the record, the court is not persuaded that Plaintiffs' claims were unfounded at the outset of this litigation. It is a closer question, however, whether after the close of discovery, Plaintiffs "continued to litigate after it clearly became so." *Id.* at 422.

This case turned upon one key question: whether Catalina's April 2015 reduction in force resulted in the termination of 50 or more employees at Catalina's corporate headquarters, thereby triggering the notice requirements of the WARN Acts. Under the federal WARN Act, covered employers must provide employees with advance notice of a "mass layoff," 29 U.S.C. § 2102(a). This requirement takes effect when, *inter alia*, at least 50 full-time employees are terminated over a 30-day period. *Id*. § 2101(a). The California WARN Act similarly mandates that covered businesses who order a "mass layoff" of 50 or more employees during a 30-day period must provide advance notice to employees. Cal. Labor Code §§ 1400(d), 1401(a). [1] Notably, the federal WARN Act also contains a burden-shifting provision, where all employment losses that "occur within any 90-day

---

[1] Even though Plaintiffs brought a California WARN Act claim, they left undisputed at the summary judgment stage that "in the 12 months prior to the closings, none of the units employed over 75 employees." (Dkt. 79-1 ¶ 42.) Consequently, Catalina's corporate headquarters could not be a "covered establishment" subject to the California WARN Act notice provisions. *See* Cal. Lab. Code § 1400(a).

3

period shall be considered to be a plant closing or mass layoff" unless the employer demonstrates otherwise. *See* 29 U.S.C. § 2102.

As articulated in its opposition to the summary judgment motion, Plaintiffs' theory of recovery was that Catalina terminated 53 employees between April 1 and April 24, 2015 at its corporate headquarters. (Dkt. 79-3.) The sole evidence that Plaintiffs offered in support of this theory were Catalina's payroll records, spanning the period from April 1, 2015 to May 27, 2015. These records suggested that Catalina's corporate headquarters had 53 individuals on its payroll on April 1, 2015. (Pls.' Am. Ex. 3, Page ID #1351, Dkt. 80). Plaintiffs then speculated that the word "TRUE" on an employee's payroll run records indicated whether that employee was laid off, and that all 53 employees were terminated by April 24, 2015. (Opp. at 12 n.4.).

This theory, when adopted and liberally construed, was not borne out by the evidence. To the contrary, the payroll evidence appeared to reinforce Defendants' contentions. As the court stated:

> Plaintiffs offer no explanation or evidentiary support for this reading of the payroll records. Furthermore, the same payroll records indicate that the allegedly terminated employees continued to receive paychecks well after their termination dates.
>
> . . . .
>
> The court finds that Catalina's payroll records do not reasonably support Plaintiffs' theory of termination, whereby all 53 of the employees at Catalina's corporate headquarters were terminated as of April 24, 2015. Instead, the payroll record bolsters Defendants' contention that 47 employees were terminated as part of the April 2015 reduction in force. The names of six out of the original 53 employees appear on Catalina's payroll as of May 27, 2015. (Order, Dkt. 83.)

As Defendants highlight, Plaintiffs had ample opportunity to depose company officials about the employment records. Yet Plaintiffs did not develop the record further in discovery, or set forth a non-speculative basis for their interpretation of the payroll records. *See Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) ("[M]ere

4

allegation and speculation do not create a factual dispute for purposes of summary judgment."). In the absence of this evidentiary foundation, Plaintiffs lacked a viable theory of recovery. Defendants, on the other hand, presented evidence that Catalina terminated only 47 employees from its corporate headquarters, (Donbavand Decl. ¶ 6), and that Catalina did not terminate 50 or more employees total in the 90 days before or after the April 2015 reduction in force. (*Id.* ¶ 7.)

Although Plaintiffs emphasized that the federal WARN Act allows employment losses within a 90-day period to be aggregated and that voluntary departures may also count as employment losses, none of these legal arguments were tethered to facts in the record. As the court emphasized in its prior order, "Plaintiffs proffer no evidence of additional terminations over a 90-day period that were not reflected in the April 1 to May 27, 2015 payroll records." (Order, Dkt. 83 at 6.) Moreover, "the record is devoid of evidence of any employees who left voluntarily because of the closure of Catalina's corporate headquarters." (*Id*.)

Plaintiffs now allege for the first time that the lack of additional payroll records produced by Defendants in discovery for the period after May 27, 2015 means that all 53 employees were subsequently terminated. Plaintiffs did not specifically propound this theory at the motion for summary judgment stage. Although Plaintiffs alluded to the fact that operations at Catalina's corporate headquarters had wound down, (Dkt. 79 at 3), they did not introduce evidence that the remaining employees were terminated, rather than transferred, or that these terminations occurred within the requisite 90-day period. Instead, Plaintiffs advanced the argument that *all* 53 employees were terminated between April 1 and April 24, 2015. (*Id.* at 4.)

Under Federal Rule of Civil Procedure 56, Plaintiffs "must present *affirmative* evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986) (emphasis added). In other words, it is the plaintiff's burden to produce evidence creating a genuine issue of material fact

5

when the motion for summary judgment is properly supported. *Id*. This principle "is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery."[2] *Id*.

Defendants counter that "in every summary judgment case, it turns out that – even *after* discovery—the losing party had no factual evidence to support his claim." (Dkt. 90, at 10.) That misstates the legal standard. Summary judgment may be entered when the evidence is insufficient to create a genuine dispute of material fact *or* when, as here, plaintiffs proffer no evidence in support of material facts called into dispute by defendants. *Cf. Mitchell v. Office of Los Angeles Cty.*, 805 F.2d 844, 847 (1986) ("There is a significant difference between the bringing of cases with no foundation in law or facts at the outset and the failure to present evidence sufficient to justify relief at trial."). Here, not only was there no affirmative proof on the key question of whether all 53 employees were terminated during the April 2015 reduction in force, but Plaintiffs' interpretation of the payroll records was wholly speculative.[3]

The Ninth Circuit addressed a similar situation in *Galen v. County of Los Angeles*, 477 F.3d 652, 667–68 (9th Cir. 2007). There, the plaintiff continued to press a claim after he had "failed to uncover any evidence" to support his theory that the county had adopted a policy or practice that resulted in a constitutional violation. *Id*. at 667. At the same time, ample evidence to the contrary existed in the record. Affirming the district court's award of attorneys' fees on this claim, the Ninth Circuit held that "[b]ased on the evidence

---

[2] Although Plaintiffs claim that Defendants resisted discovery, it was incumbent upon Plaintiffs to prosecute their own case and, if necessary, file a motion to compel.
[3] Plaintiffs attempt to fault Defendants for "refus[ing] to come clean" about WARN Act violations, which compelled them to pursue this case further. (Opp. at 9.) Specifically, Plaintiffs argue that Defendants "obscured the facts" by not directly denying key allegations and raising affirmative defenses in their Answer. (Opp. at 9). Yet Plaintiffs' argument commits the logical fallacy of assuming the truth of what it sets out to prove.

6

[Plaintiff] acquired during discovery, it was obvious that he could not meet his burden." *Galen v. Cty. of Los Angeles*, 477 F.3d 652, 667–68 (9th Cir. 2007).

So too here. At the close of discovery, Plaintiffs had uncovered no evidentiary foundation for their claim that all 53 employees had been terminated during the April 2015 reduction in force. A claim is frivolous "only when the result is obvious or the . . . arguments of error are wholly without merit." *Karam v. City of Burbank*, 352 F.3d 1188, 1195 (9th Cir. 2003). In light of the record presented at the close of discovery, the court's resulting grant of summary judgment on Plaintiffs' WARN Act claims was an obvious result. Accordingly, the court awards reasonable attorneys' fees to Defendants limited to the preparation of the motion for summary judgment.[4]

### ii. Reasonable Attorneys' Fees

Having determined that Defendants are entitled to attorneys' fees, the court now calculates a reasonable fee amount. The "starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Courts must exclude hours that were not reasonably expended from the initial fee calculation. *Id*. at

---

[4] Because it cannot be determined whether all of Defendants' claimed expenses are non-taxable and reasonably related to the summary judgment motion, the court denies Defendants' request for non-taxable costs. Furthermore, as Defendants have not complied with Rule 11's stringent "safe harbor" provision or with Local Rule 7-3's conference of counsel requirement, the court denies Defendant's request for sanctions. *See Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998) ("[A] party cannot wait until after summary judgment to move for sanctions under Rule 11"); *Radcliffe v. Rainbow Const. Co.*, 254 F.3d 772, 789 (9th Cir. 2001) ("[A]lthough a defendant had given informal warnings to the plaintiffs threatening to seek Rule 11 sanctions, these warnings did not satisfy the strict requirement that a motion be *served* on the opposing party twenty-one days prior to filing"); *see also* F.R.C.P. 11 ("A motion for sanctions must be made separately from any other motion. . . .").

7

434. However, there is a strong presumption that the resulting "lodestar" figure represents a reasonable fee. *Jordan v. Multnomah Cty.*, 815 F.2d 1258, 1262 (9th Cir. 1987).

Here, the parties agree that Defendants have prevailed on their WARN Act claims.[5] The only dispute that remains is what constitutes a reasonable fee award. The court finds, and Plaintiffs do not dispute, that the rates set forth by Defendants' counsel are within the range of reasonable rates for attorneys in the local community, taking into consideration the "experience, skill, and reputation of the attorney." *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995). Specifically, the court finds that the following rates are reasonable:

- Spencer Skeen, Shareholder: $310/hour
- Tim Johnson, Shareholder: $310/hour
- Marlene Moffit, Of Counsel: $310/hour
- Jonathan Liu, Associate: $240/hour

Moreover, Defendants have submitted detailed billing records of work performed. Having conducted a review of these records, the court finds that 55 hours were billed in relation to the preparation of the motion for summary judgment alone. In calculating this figure, the court excludes billing entries concerning discovery-related issues, block-billed entries, and other entries that do not appear specifically related to counsel's preparation of the motion and supporting declarations.

Although Plaintiffs do not object to any specific billing entries, they claim that much of the briefing used in the motion for summary judgment is duplicative of that in an earlier case, *Ross v. Catalina Restaurant Group, Inc.*, Case No. CV 15–02626 DDP (JPR).

---

[5] The court notes that California's WARN Act carries a provision authorizing fees "to any plaintiff who prevails" on a claim. Cal. Lab. Code § 1404. Although the statute is silent as to prevailing defendants, the court finds that Defendants are entitled to recover for all work performed in relation to the motion for summary judgment because the California and federal WARN Act claims are largely overlapping, based on the same facts and legal theories.

8

The court agrees. With the primary exception of a brief summary of the *Ross* case, the memoranda and declarations in support of Defendants' summary judgment motions in both cases are nearly identical. For this reason, the court imposes a reduction of 8 hours to time billed by Ms. Moffit in connection with the preparation of the moving papers.

Additionally, as to the preparation of the reply brief, the court imposes a reduction of 5 hours to time billed by Mr. Liu, 6.2 hours to time billed by Mr. Johnson, and 2 hours to time billed by Mr. Skeen. Finally, the court deducts 4 hours from the time spent preparing and attending the hearing by Mr. Skeen, and deducts 3.5 hours from the time spent preparing and attending the hearing by Mr. Johnson, as this work is duplicative of the tasks performed by Mr. Skeen. In view of the frivolous arguments advanced in Plaintiff's opposition brief, the court finds that these adjustments reflect the reduced number of hours reasonably expended by counsel in preparing a reply.

Applying the approved rates to the adjusted hours, the court finds that the lodestar method yields the following result:

| Attorney | Reasonable Rate | Hours | Lodestar |
|---|---|---|---|
| Spencer Skeen | $310 | 9.1 | $2,821 |
| Tim Johnson | $310 | 3.6 | $1,116 |
| Marlene Moffit | $310 | 2.7 | $837 |
| Jonathan Liu | $240 | 10.9 | $2,616 |
| *Total* | | | $7,390 |

Therefore, Defendants' motion for fees is granted in the amount of $7,390.[6] To this amount, the court adds an additional sum of $9,429 for fees related to the preparation of the present fee motion.

---

[6] This figure excludes a fee of $1,550.00 for five hours, billed as "No charge. Travel to and from hearing on Motion for Summary Judgment." (Dkt. 87-1, Page ID# 1502.)

9

Mr. Johnson's declaration indicates that Defendants' counsel billed a total of 53.7 hours for the fee motion. (Johnson Supp. Decl. ¶ 4.) Of these hours, Defendants claim that 4.6 hours are attributable to Mr. Skeen, 13.5 hours to Mr. Johnson, and 35.6 hours to Mr. Liu. (*Id.*) The court has adjusted these hours for reasonableness. Specifically, the court has subtracted 2 hours from the amount of time billed by Mr. Skeen for preparing for and attending the fees hearing. Furthermore, the court has not awarded fees for the 3 hours billed by Mr. Johnson in preparing for and attending the same hearing. With respect to the preparation of the fees motion, the court has deducted 5.6 hours from Mr. Johnson's hours to reflect the reduced amount of time reasonably required to revise or supplement the moving papers and reply briefing. Similarly, the court has deducted 5.4 hours from Mr. Liu's hours to reflect the reduced amount of time reasonably required to draft the moving papers and reply brief. Finally, the court has reduced the amount of time billed by Mr. Liu for the drafting of the notice of motion and proposed order by 0.6 hours.

Applying the approved rates, this would result in the following lodestar:

| Attorney | Reasonable Rate | Hours | Lodestar |
|---|---|---|---|
| Spencer Skeen | $310 | 2.6 | $806 |
| Tim Johnson | $310 | 4.9 | $1,519 |
| Jonathan Liu | $240 | 29.6 | $7,104 |
| *Total* | | | $9,429 |

With these adjustments, the court finds that the chart above reflects a reasonable amount of hours expended by counsel on the fees motion. Thus, Defendants are entitled to $9,429 for fees related to the preparation of the present motion.

**B. Motion for Costs**

Defendants additionally move the court for an award of costs under Federal Rule of Civil Procedure 54(d)(1). Typically, an award of taxable costs is handled in the first instance by the Clerk of Court. Local Rule 54-2.1 provides that the party entitled to costs

must file and serve a completed Form CV-59 "Application to the Clerk to Tax Costs" within 14 days after entry of judgment. By the court's calculation, that deadline was on February 22, 2018. That is the same day on which Defendants filed the present motion.

To the extent that Defendants seek taxable costs, they are directed to file an appropriate application with the Clerk of Court. Given that Defendants did file the present motion by February 22, 2018, the court orders that the Clerk deem Defendants' application for costs timely filed if received within five (5) days of this Order, or by May 7, 2018. Accordingly, the court grants Defendants leave to file an application for taxable costs with the Clerk.

**IV. CONCLUSION**

For the reasons stated above, the court GRANTS Defendants' motion for attorneys' fees in the amount of $16,819. Defendants may file an application for taxable costs with the Clerk of Court within five (5) days of this Order, or by May 7, 2018.

**IT IS SO ORDERED.**

Dated: April 30, 2018

_____

DEAN D. PREGERSON

UNITED STATES DISTRICT JUDGE